United States Bankruptcy Court
Southern District of Texas

**ENTERED**

September 27, 2023

Nathan Ochsner, Clerk

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 22-31366 |
| CRESENT TRADING LLC, | § | |
| | § | CHAPTER 7 |
| Debtor. | § | |
| | § | |
| SOUTHSTAR HOLDINGS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 22-03215 |
| | § | |
| CREST ENERGY PARTNERS GP, | § | |
| LLC, *et al.*, | § | |
| | § | |
| Defendants. | § | |

### ORDER GRANTING KINDER MORGAN, INC.'S
### MOTION FOR SUMMARY JUDGMENT
### (RE: Docket No. 33)

These parties have been litigating for over nine years in Texas state court. The litigation arises from the sale of a pipeline system involving two Kinder Morgan subsidiaries and Debtors Crest Gathering LLC and Crescent Trading LLC.[1] Southstar Holdings, LLC believes it is entitled to a broker/finder fee but was improperly cut out of the deal by the defendants.

Crest Gathering and Crescent Trading started bankruptcy cases in 2022, and the lawsuit was eventually removed to this Court. Kinder Morgan seeks summary judgment on Southstar's claims for tortious interference with contracts. Southstar wants this Court to defer to prior state court denials of summary judgment. After careful consideration, summary judgment is warranted and the Court grants it.

---

[1] These Crest entities and Richard Tribe are collectively called the "Crest Defendants."

## Jurisdiction

This Court has jurisdiction under 28 U.S.C. § 1334(b). This is a core proceeding under 28 U.S.C. § 157(b). The parties' express and implied consent also provides this Court constitutional authority to enter a final judgment. *See Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 678–83 (2015); *Kingdom Fresh Produce, Inc. v. Stokes Law Off., L.L.P. (In re Delta Produce, L.P.)*, 845 F.3d 609, 617 (5th Cir. 2016).

## Background

In 2012, Carl Beach, through an entity named Eagle Ford Midstream, tried to purchase a pipeline system owned by Copano Field Services, GP, LLC and CPG LP Holdings, LLC (together "**Copano**"). But it never happened.

In 2013, Kinder Morgan acquired Copano. That same year, Southstar, which is also owned by Beach,[2] entered into two agreements with Crest Energy Partners, LP to facilitate the evaluation of a possible transaction about the Copano pipeline system. First was an April 2013 confidentiality agreement ("**CA**").[3] The CA defines Crest Energy as "Buyer" and Southstar as "Seller" and provides that the parties agreed to share "Buyer's Evaluation Material" and "Seller's Evaluation Material."[4] Parties could only share confidential information with "directors, officers, employees, advisors, and investors who need to know the content of the information" and agreed to be bound by the terms of the CA.[5]

The CA also provides that no party has to make a proposal, enter into negotiations, or continue any evaluation about a business transaction with the other party.[6] But Crest Energy and its affiliates, subsidiaries, or representatives could not "contact with, solicit for purchase, or contract for service" the properties Southstar provided to Crest Energy without Southstar's written consent until April 2014.[7]

---

[2] Beach Dep. Tr., Kinder Morgan Ex. D, at 4:20-23, ECF No. 33-5.

[3] Confidentiality Agreement, Kinder Morgan Ex. A, ECF No. 33-2.

[4] Confidentiality Agreement ¶¶ 1, 2.

[5] Confidentiality Agreement ¶ 4.

[6] Confidentiality Agreement ¶ 8.

[7] Confidentiality Agreement ¶ 9.

The second agreement between Southstar and Crest Energy is a letter of intent executed in June 2013 ("**Southstar-Crest LOI**").[8] This LOI provides that Southstar and Beach, collectively as "Broker," are interested in purchasing a pipeline system from Copano Energy, LLC, as "Seller," for Crest Energy.[9]

The LOI contains non-binding and binding sections. Article I is non-binding. It "merely constitutes a statement of the mutual intentions of the parties with respect to the proposed acquisition . . . ."[10] The matters described in Article I also depended on the "negotiation, execution, and delivery of a definitive agreement" between Copano Energy and Crest Energy.[11] The non-binding terms outline a proposed sale of a pipeline system under which Crest Energy would pay Copano Energy and Southstar $4 million.[12] If $4 million was a final agreed upon amount, Copano Energy would keep $2.7 million and Southstar would keep $1.3 million as a broker fee.[13] A definitive agreement, however, could contain terms different from those in Article I.[14] A proposed closing for the proposed asset sale would occur by August 1, 2013.[15]

Article II is binding, but it purports to bind Copano Energy—a non-signatory party.[16] Copano Energy was supposed to provide Crest Energy access to its books and records and allow Crest Energy to communicate with its key employees and suppliers.[17] And until a definitive agreement was signed, Copano Energy (again, a non-signatory party) could not enter into any transactions outside of the ordinary course about the pipeline without Crest Energy's consent.[18] It also provides that Copano Energy would not solicit or entertain inquiries about the assets with any other party until August 1, 2013.[19] Finally, Article 2.6 provides that "without prejudice to the non-binding nature of Article I," the LOI could terminate at any time by mutual consent between Southstar and Crest Energy or by any party after

---

[8] Southstar-Crest LOI, Kinder Morgan Ex. B, ECF No. 33-3.

[9] Southstar-Crest LOI at 1.

[10] Southstar-Crest LOI at 1.

[11] Southstar-Crest LOI at 1.

[12] Southstar-Crest LOI at § 1.2.

[13] Southstar-Crest LOI at § 1.2.

[14] Southstar-Crest LOI at 1.

[15] Southstar-Crest LOI at § 1.4.

[16] Southstar-Crest LOI at Article II.

[17] Southstar-Crest LOI at § 2.1.

[18] Southstar-Crest LOI at § 2.5.

[19] Southstar-Crest LOI at § 2.4.

August 1, 2013 if the proposed agreement the LOI contemplates was not executed by Crest Energy and Copano Energy.[20]

Southstar tried to lock up Copano in a separate June 2013 letter of intent ("**Southstar-Copano LOI**").[21] This LOI outlines the terms of a separate non-binding potential transaction where Southstar would purchase partnership interests in Copano for $2.7–$3 million.[22] Copano never signed this LOI. Kinder Morgan didn't either. But analyzing the non-binding terms of both LOIs, Southstar would purchase the partnership interest in Copano for $2.7 million to $3 million and then flip it to Crest Energy for $4 million.

The potential transactions contemplated in the LOIs never occurred. Instead, Copano sold its pipeline system not to Crest Energy, but to Crest Gathering and Crescent Trading in May 2014. Southstar received no broker/finder fee from that sale. So it started a Texas state court action.[23] Southstar asserts breach of contract, tortious interference with contracts, fraud, civil conspiracy, and alter ego claims against the Crest Defendants.[24] It also asserts tortious interference claims against Kinder Morgan based on the CA, the Southstar-Crest LOI, and the Southstar-Copano LOI.[25] Southstar claims that Crest Gathering LLC and Crescent Trading LLC were created to purchase the pipeline system and intentionally avoid these agreements and also to avoid paying Southstar its fee.[26]

Kinder Morgan moved for partial summary judgment in the state court action on Southstar's tortious interference claim relating to the CA.[27] But the state court judge denied it.[28] In 2018, the Crest Defendants also moved for summary

---

[20] Southstar-Crest LOI at § 2.6

[21] Southstar-Copano LOI, Kinder Morgan Ex. C, ECF No. 33-4.

[22] Southstar-Copano LOI at § 1.2.

[23] *See* Southstar's Original Pet. at 6, ECF No. 6-4.

[24] Ninth Amended Original Pet., ECF No. 11-10.

[25] Ninth Amended Original Pet. at 23–27.

[26] Ninth Amended Original Pet. at 26.

[27] *See* Mot. Partial Summ. J. on Tortious Interference Claim, ECF No. 9-11.

[28] Judge's Docket Notes (denying motion for partial summary judgment), ECF No. 10-30. The order references notes dated January 4, 2018, the date of the first hearing on Kinder Morgan's motion. *See* Am. Notice of Hr'g, ECF No. 9-15 (setting hearing for January 4, 2018) and State Court Docket Index at 8, ECF No. 6-1 (unnumbered docket entry of non-jury hearing held on January 4, 2018).

judgment on all claims, and Kinder Morgan filed a joinder.[29] The state court denied the summary judgment motion, too.[30]

Crest Gathering and Crescent Trading filed bankruptcy cases in 2022.[31] Kinder Morgan removed the Texas state court lawsuit to this Court.[32] Kinder Morgan now seeks summary judgment on Southstar's tortious interference claims as it relates to all three agreements (the Southstar-Copano LOI, the Southstar-Crest LOI, and the CA).[33]

Southstar did not file a timely response to the summary judgment motions and the Court denied leave to file a very late response for the reasons stated on the record at the summary judgment hearing. Southstar was, however, permitted to argue. And it asserted that summary judgment should be denied because the state court previously denied a similar request.[34] Southstar also asked the Court to take judicial notice of the Texas state court record, which this Court did.

## Legal Standard

### I.    Motion for Summary Judgment

Federal Rule of Bankruptcy Procedure 7056 incorporates Federal Rule of Civil Procedure 56 in adversary proceedings. Fed. R. Bankr. P. 7056. A movant is entitled to summary judgment by showing "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those facts "that might affect the outcome of the suit under the governing law." *Smith v. Brenoettsy,* 158 F.3d 908, 911 (5th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

A defendant may seek summary judgment because the "evidence in the record would not permit the nonmovant to carry its burden of proof at trial." *Brenoettsy*, 158 F.3d at 911. The burden then shifts to the nonmovant to show that summary judgment is inappropriate. *Morris v. Covan World Wide Moving, Inc.,* 144

---

[29] Traditional and No Evidence Mot. Summ. J., ECF Nos. 10-23; 10-34.

[30] Judge's Docket Notes, ECF No. 11-11 (denying Mot. Summ. J.). The state court never provided a written opinion detailing its decision on summary judgment.

[31] Chapter 7 Vol. Pet. for Crest Gathering LLC, Case No. 22-31369 (Bankr. S.D. Tex. 2022), ECF No. 1; Chapter 7 Vol. Pet. for Crescent Trading LLC, Case No. 22-31366 (Bankr. S.D. Tex. 2022), ECF No. 1.

[32] Notice of Removal, ECF No. 1.

[33] *See* Kinder Morgan Mot. Summ. J., ECF No. 33.

[34] *See* May 30, 2023, Hr'g Tr.

F.3d 377, 380 (5th Cir. 1998) (citing *Lavespere v. Niagara Mach. & Tool, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990)).

In determining whether summary judgment is appropriate, all inferences are drawn in the nonmovant's favor. *See Harville v. City of Houston, Mississippi*, 945 F.3d 870, 874 (5th Cir. 2019). Factual controversies are resolved in favor of the nonmovant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts." *Laughlin v. Olszewski,* 102 F.3d 190, 193 (5th Cir. 1996) (quoting *McCallum Highlands, Ltd. v. Washington Cap. Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)). A nonmovant may successfully oppose summary judgment by producing "significant probative evidence" that there is an issue of material fact to warrant a trial. *Cap. One Bank v. Zeman (In re Zeman)*, 347 B.R. 28, 31 (Bankr. S.D. Tex. 2006). "This burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings." *Id.* (citing *Morris*, 144 F.3d at 380). Without proof, a court will not assume the non-movant could or would prove the necessary facts. *Id.* (citing *McCallum,* 66 F.3d at 92*, revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir. 1995)).

## II.   Successive Motions for Summary Judgment

Under the law-of-the-case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issue in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)); *see also Trevino v. U.S. Bank Tr., N.A. (In re Trevino)*, 633 B.R. 485, 499 (Bankr. S.D. Tex. 2021) (citing *Med. Ctr. Pharmacy v. Holder*, 634 F.3d 830, 834 (5th Cir. 2011) (same)). But this Court now sits as the trial court and may reconsider prior summary judgment denials. *See Jackson v. Widnall*, 99 F.3d 710, 713 (5th Cir. 1996) ("We need not consider whether the second motion merely restated the first, however, as 'a trial court may reconsider a previously denied motion for summary judgment even in the absence of new evidentiary material.'") (quoting *Conkling v. Turner*, 18 F.3d 1285, 1296 (5th Cir.1994)).

Courts also have considerable discretion in controlling their dockets, which "includes determining whether to allow successive or multiple motions for summary judgment." *Henderson v. Wal-Mart Stores, Inc.*, No. 1:14-CV-224, 2015 WL 3901755, at *3 (E.D. Tex. June 23, 2015) (citing *Allstate Fin. Corp. v. Zimmerman*, 296 F.2d 797, 799 (5th Cir. 1961)). The Court finds that it is appropriate and does consider Kinder Morgan's summary judgment motion.

## Analysis

Kinder Morgan seeks summary judgment on Southstar's tortious interference with a contract claim based on the Southstar-Copano LOI, the Southstar-Crest LOI, and the CA. To recover for tortious interference with a contract under Texas law, a plaintiff must prove: (1) that a contract subject to interference exists; (2) that the alleged act of interference was willful and intentional; (3) that the willful and intentional act proximately caused damage; and (4) that actual damage or loss occurred. *Prudential Ins. Co. of Am. v. Fin. Rev. Services, Inc.*, 29 S.W.3d 74, 77 (Tex. 2000) (citing *ACS Inv'rs, Inc. v. McLaughlin,* 943 S.W.2d 426, 430 (Tex. 1997)).

### I.    The Southstar-Copano LOI

A threshold question in a tortious interference with a contract claim is whether the contract at issue is "subject to the alleged interference." *ACS Inv'rs.,* 943 S.W.2d at 431. In other words, Southstar must be a party to a valid contract in effect when any alleged interference occurred. *See, e.g.*, *Vertex Servs. v. Oceanwide Houston, Inc.*, 583 S.W.3d 841, 853–54 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (no tortious interference claim because plaintiff failed to prove the existence of a valid contract).

Parties form a binding contract when there is: "(i) an offer, (ii) acceptance that is in strict compliance with the offer's terms, (iii) a meeting of the minds on the essential terms, (iv) each party's consent to those terms, and (v) execution and delivery of the contract with the intent that it be mutual and binding." *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 502 n.21 (Tex. 2018).

Southstar states in the Ninth Amended Original Petition that it would show that Kinder Morgan tortiously interfered with Southstar-Copano LOI.[35] But Copano and Kinder Morgan never signed the LOI. So there is no acceptance in strict compliance with the terms of the offer and no execution and delivery of a contract with the intent that it be mutual and binding. Emails about getting signatures for a contract are not enough under Texas law.[36] Summary judgment is thus granted on this claim.

### II.    The Southstar-Crest LOI

Southstar alleges Kinder Morgan tortiously interfered with this LOI by: (1) refusing to allow Copano to engage in sales negotiations with Crest Energy; (2) refusing to allow Copano to recognize Southstar's role as purchaser to "flip" the Copano partnership interests; (3) forcing a delay of the sale; and (4) telling Jay

---

[35] Ninth Amended Original Pet. at 26–27.

[36] *See, e.g.*, Kinder Morgan Ex. F, ECF No. 33-7.

Smith (a Kinder Morgan employee) not to sell to Crest Energy if Southstar was part of the transaction.[37] Summary judgment is warranted for many reasons.

First, the LOI is not a viable contract subject to interference about a sale of the Copano pipeline system. Article I outlines a proposed sale that is not binding on any party.[38] It also states that a binding commitment about the assets results only from the negotiation, execution, and delivery of a definitive agreement *between Copano Energy and Crest Energy*—which never occurred.[39] Therefore, as it relates to a tortious interference claim arising out matters in Article I of the Southstar-Crest LOI, there is no contract subject to tortious interference. *See, e.g.*, *WTG Gas Processing, L.P. v. ConocoPhillips Co.*, 309 S.W.3d 635 (Tex. App. —Houston [14th Dist.] 2010, pet. denied) (court finding no tortious inference with a contract in case involving a non-binding indication of interest because no contract existed). Courts across the country applying similar state law on tortious interference with a contract rule the same. *See, e.g.*, *Knight v. Sharif,* 875 F.2d 516, 525 (5th Cir. 1989) (no tortious interference claim based on non-binding letter of intent under Mississippi law similar to this case); *Buechner v. Avery,* 38 A.D.3d 443, (N.Y. App. Div. 2007) (dismissing tortious interference with contract claim under similar New York law based on a letter of intent providing it was not binding except about clauses not at issue); *Barmash v. Perlman,* No. 650417/2013, 2013 WL 4467807, at *10 (Sup. Ct., N.Y. County 2013) ("The LOI that forms the basis of defendants' counterclaims is clearly non-binding, so the counterclaims must be dismissed."); *Hansen v. Phillips Beverage Co.,* 487 N.W.2d 925, 927 (Minn. Ct. App. 1992) (no tortious interference claim based on non-binding letter of intent under Minnesota law similar to this case).

It is unclear from the Ninth Amended Petition whether Southstar also alleges that Kinder Morgan tortiously interfered with Article II of the Southstar-Crest LOI, but summary judgment is also appropriate here. The preamble states that Article II binds Crest Energy and Southstar.[40] But the terms of Article II fail to do so. Instead, it purports to bind Copano Energy, who is not a party to the LOI and never signed it. The Ninth Amended Petition says several times that this agreement is binding on the parties.[41] So that means it must be strictly construed on its terms as written against the drafter. *See URI v. Kleberg Cnty.*, 543 S.W.3d

---

[37] Ninth Amended Original Pet. at 26–27.

[38] Southstar-Crest LOI at 1.

[39] Southstar-Crest LOI at 1. Southstar argues that the definitive agreement between Copano and the Crest debtors is the definitive "Agreement." But that is wrong based on the plain language of the LOI. Kinder Morgan/Copano did not have to sell the pipeline system to anyone and did not have to include Southstar/Beach in any such transaction.

[40] Southstar-Crest LOI at 1.

[41] Ninth Amended Original Pet. at 10–12, 15–16.

755, 757 (Tex. 2018) (applying the four corners rule of contract interpretation); *Temple-Eastex, Inc. v. Addison Bank*, 672 S.W.2d 793, 798 (Tex. 1984).

Second, Southstar's claim fails because Kinder Morgan had no legal obligation to sell the pipeline assets to a particular party or to include Southstar as part of that sale. Refusing to allow Copano (which it owns) to engage in sales negotiations with Crest Energy, refusing to allow Copano to recognize Southstar's role as purchaser to "flip" the Copano partnership interests, and telling Jay Smith not to sell to Crest Energy if Southstar was part of the transaction are within Kinder Morgan's legal right. Exercising one's legal rights does not amount to tortious interference with a contract. And its motive for exercising legal rights is irrelevant. *Gulf Liquids New River Project, LLC v. Gulsby Eng'g*, 356 S.W.3d 54, 77 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

There is also no evidence that Kinder Morgan forced a delay in the sale of the pipeline (addressed in the non-binding parts of the LOI) to cause Crest Energy to allegedly breach the Southstar-Crest LOI. Beach even testified in a deposition that the purported delays stemmed from, among other things, a change in the sales price of the pipeline system.[42] Southstar produced no significant probative evidence that there is an issue of material fact here. Summary judgment is thus granted on this claim.

## III.   The CA

Summary judgment is also granted on Southstar's tortious interference claim about the CA. Southstar alleges that Kinder Morgan tortiously interfered by sharing confidential or proprietary information with "others" in purported contradiction to the letter, spirit, and intent of the CA.[43]

But the CA doesn't purport to—and in any event couldn't—limit Kinder Morgan's right to share its own information or discuss selling the pipeline system to a third party. Beach also admitted under oath that he had no reason to believe that Kinder Morgan received Southstar's confidential information.[44] There is also no evidence in the record before the Court that any confidential information subject to the CA was shared by Kinder Morgan with "others." And no evidence in the record that Kinder Morgan committed a willful and intentional act of interference with the CA by, among other things, causing a party to the CA to breach it. Southstar produced no significant probative evidence that there is an issue of material fact here.

---

[42] Beach Dep. Tr. at 58:24–61:8.

[43] Ninth Amended Original Pet. at 20, 22.

[44] Beach Dep. Tr. at 34:1–22, 35:3, 115:17–19.

Thus, it is ORDERED that Kinder Morgan's motion for summary judgment is granted on Southstar's tortious interference claim against Kinder Morgan.

Signed:  September 27, 2023

Christopher Lopez
United States Bankruptcy Judge